# Sloan *v.* Johnson, Appellant.

*Sale—Delivery—Warehouse receipts—Indorsement—Act of September 24, 1866, P. L. (1867) 1363.*

Where the intention of the parties is clear, delivery of a warehouse receipt without formal indorsement transfers the title of the goods represented by the receipt.

*Principal and agent—Ratification of agent's act—Estoppel—Warehouse receipts.*

Where a principal sends to his agent warehouse receipts with instructions to sell them for cash, and the agent takes notes instead of cash and sends the notes to his principal who holds them until maturity, the principal is estopped from repudiating the act of the agent in taking notes instead of cash for the receipts.

*Warehouse receipts—Fraud—Evidence.*

In an action upon warehouse receipts, where it appears that the plaintiff paid the full value of the receipts to the persons to whom the defendant's broker had sold them, allegations that the receipts were obtained from the defendant by false representations of the broker, are not sufficiently sustained to submit to the jury, where the only statement shown to be false related to the rating of the original purchasers, that this rating had been investigated by the defendant at a time when he could have still repudiated the sale, and that there was nothing to connect plaintiff with the representations made by the broker.

In an action on warehouse receipts to recover the value of whiskey represented by the receipts, where the plaintiff's witnesses give no definite amount for the value of the particular brand represented by the receipts, and the defendant gives a specific amount, and the verdict shows that the jury adopted his appraisement, the judgment on the verdict will not be set aside on appeal, on the ground that it was a compromise verdict reached by the jury from taking into consideration certain evidence as to fraud erroneously admitted at the trial.

Argued April 28, 1902. Appeal, No. 103, April T., 1902, and No. 1, April T., 1903, by plaintiff and defendant, from judgment of C. P. Fayette Co., Dec. T., 1900, No. 222, on verdict for plaintiff in case of George B. Sloane v. Daniel J. Johnson. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Affirmed.

Assumpsit on warehouse receipts, to recover the value of fifty barrels of whiskey. Before REPPERT, P. J.

The facts are fully stated in the opinion of the Superior Court.

The court charged in part as follows:

In 1894 the defendant, Mr. Johnson, became the proprietor of the Moss Distilling Company, and operated a distillery situate at Port Royal in Westmoreland county, and in the summer of 1895 these certificates were issued. They all bear the date of July 9, 1895, and each is for five barrels of whiskey, and the total number of proof gallons of these fifty barrels is 2,387.66. So far as the payee, what we may call the payee, in these certificates is concerned, the place where the payee's name should be written is left blank. [Where certificates of that kind are issued and circulated from hand to hand, any holder may write his name in the blank space left in the certificate as payee. He would have a right to do that.] [4] And being the holder and the payee, he would have the right to demand of the maker of the certificate the property called for in the certificate, if the maker of the certificate had no just or legal defense to that demand.

[Now, where such certificates as these in suit have been obtained or put in circulation by fraud, as between the maker of such certificates and an innocent holder who has paid value, the loss must fall on the maker. He must bear the loss, and not the innocent holder. If Mr. Sloan didn't know anything about any fraud that may have been practiced upon Mr. Johnson by Preyer and Hart & Company, and if Sloan paid value for them, then Johnson must bear the loss, and your verdict must be for Sloan for the value of these certificates.] [5]

Now, in that view of the case, it is necessary for you to pay particular attention to the testimony of Mr. Sloan, and I will

refer to it somewhat at length, just as I referred to the testi-mony of Mr. Johnson somewhat at length. He says he got these certificates July 24, 1895, from J. B. Hart, and the cir-cumstances under which he got them are about as follows: Hart was running a restaurant with bar attached, and adver-tised for a clerk or cashier. Mr. Sloan answered that adver-tisement. Hart demanded a deposit of $1,000 as security for his honesty and good faith. Mr. Sloan says he put up the de-posit with Hart, or paid Hart the $1,000, and as security for his $1,000 Hart turned over to him these certificates—ten cer-tificates calling for fifty barrels of whiskey. He says he never knew Hart until he met him in pursuance of his answer to the advertisement, and that he obtained the certificates some three or four days after he met him, when they had struck their bar-gain in regard to Sloan entering Hart's employ. He declares that they have been in his possession ever since, and that he has no knowledge of their having been obtained wrongfully or in any wrongful way from Johnson; that he met Preyer while he was working there for Hart & Company, or for Hart, but that he had nothing to do with him in regard to these ware-house receipts. Now, on cross-examination—his testimony is somewhat lengthy, but I will refer to it as briefly as I can—he says, that prior to his accepting these receipts as security for his $1,000, and while negotiations for employment with Hart were going on, Hart and Sloan went to an attorney's office and there an agreement for employment was drawn up which the parties executed, and these certificates, Sloan says, were sub-mitted to the attorneys for their opinion as to their being good and legal security for the $1,000, and their opinion being fa-vorable, and having made an investigation of the certificates, he accepted the certificates as security for the $1,000 in cash which he had turned over to Hart. Hart fell behind in the wages which he had agreed to pay Sloan, and instead of re-maining the three months which the agreement of employment called for, he remained only ten weeks. His connection with Hart then, as an employee of Hart, was severed by reason of his wages becoming in arrears. He dropped in two or three times, he says, in order to get his wages, and they were not paid, and he says he also demanded his $1,000; but he doesn't say that he made any specific offer to return the ten certificates

for the fifty barrels of whiskey. Now he would have a right, until his $1,000 was repaid, to retain these certificates, and would have a right to sue on them. So far as their being simply security for $1,000 is concerned, that wouldn't affect his right to demand the goods for which the certificates stand, and on refusal of them to sue for them.

At the time he obtained these certificates Sloan says that the whiskey was worth fifty-five cents per gallon. He says he doesn't know how Hart got possession of the certificates. He doesn't know now what has become of Hart. The last time he saw him was two or three years ago. The firm name was J. B. Hart & Company, but he says Hart told him that there wasn't any firm; that the firm of J. B. Hart & Company consisted of J. B. Hart simply. He says he never got the question of wages adjusted with Hart.

[Now, if you believe this statement of the plaintiff as to how and in what manner these certificates came into his hands, that he was acting in good faith and paid value, then your verdict must be for this plaintiff, without regard to the character of the dealing between Preyer and Hart & Company and Johnson.] [5]

Now it is your duty to credit his testimony if there is no good reason to the contrary. Is there sufficient other testimony in the case, are there any statements in regard to what took place, of such a contradictory character as to satisfy you that the statement of Sloan is not correct? The credibility of the witnesses is for you. You will take into consideration anything that may affect their credibility, their manner on the stand, the corroboration of their testimony by other testimony in the case, any contradictions that you may detect in their testimony, as well as their interest in the case.

[Now, in case you find that Mr. Sloan was an innocent holder, for value, of these certificates, even if in the first place they were put in circulation by a fraud and imposition upon Mr. Johnson, then you will ascertain the value of the goods which these certificates call for, and return a verdict for him to that amount.] [5]

Verdict and judgment for plaintiff for $770.06. Both defendant and plaintiff appealed.

643, (1902).] Assignment of Error—Opinion of the Court.

*Errors assigned* by defendant were (4, 5) above instructions, quoting them.

*Error assigned* by plaintiff among others was that the charge distracted the attention of the jury from the single point in the case namely, the market value of the whiskey.

*A. D. Boyd* and *Edward Wilson Boyd*, for defendant.—Sloan, the plaintiff, took these warehouse receipts subject to the equities existing between Hart, his vendor, and Johnson, the defendant.

The fundamental error of the court in trying this cause was in treating the warehouse receipts in question as though they were promissory notes or bills of exchange—the symbols or representatives of money—instead of treating them as the symbols or representatives of merchandise, and in holding that Sloan, therefore, took them freed from the equities existing between Hart and Preyer, and Johnson: Empire Transportation Co. v. Steele, 70 Pa. 190 ; Decan v. Shipper, 35 Pa. 243.

The receipts in question here were procured from Johnson by fraudulent misrepresentations made by Preyer, acting in collusion with Hart. Preyer had neither title nor authority to sell otherwise than for cash: Easton v. Worthington, 5 S. & R. 130 ; Lecky v. McDermott, 8 S. & R. 500 ; Guerreiro v. Peile, 3 Barn. & Ald. 616 ; Kingsford v. Merry, 1 Hurl. & Norm. 503 ; Brower v. Peabody, 3 Kernan, 121 ; Shaw v. R. R. Co., 101 U. S. 557.

*Edward Campbell*, with him *R. P. Kennedy*, for plaintiff.

OPINION BY WILLIAM W. PORTER, J., July 10, 1902 :

This action is brought for the value of fifty barrels of whiskey. The plaintiff's claim is founded upon ten warehouse receipts issued by the defendant, who is a distiller and warehouseman. The receipts were issued in blank in respect to the person on whose account the whiskey was held, and no indorsement appears on the receipts. The plaintiff sues as transferee of the goods by purchase of the receipts. He has obtained a verdict and judgment. Appeals have been taken by both defendant and plaintiff. First, as to that of the former.

APPEAL OF DANIEL J. JOHNSON.

The warehouse receipts were sent, in the form above described, by Johnson to one, Preyer, a whiskey broker in New York city, pursuant to a communication received from Preyer that he had a cash purchaser. After they were forwarded, Preyer wrote Johnson that he had found another and more desirable purchaser in J. B. Hart & Company (as to whose business and financial standing he made certain statements), and sent the note of J. B. Hart & Company for the purchase price to Johnson, who returned it, requiring cash to be paid. Shortly thereafter, three smaller notes of J. B. Hart & Company, aggregating the purchase price, were forwarded to Johnson. These were made at four months. Johnson retained them until maturity, and, finding them unpaid, made some personal investigations in New York city, which led him to think that the former representations made by Preyer of Hart & Company were untrue. Because of this; because the broker, Preyer, had exceeded his authority in not selling for cash; and because the receipts were not indorsed, Johnson denies liability on the receipts, which, as appears by the testimony, had been delivered by J. B. Hart & Company to the plaintiff, Sloan, for a valuable consideration. These reasons for repudiation will be disposed of in their reverse order. First, it may be said that if Hart & Company were in fact owners of the whiskey represented by the receipts, the delivery of the receipts to Sloan, being intended by the parties to transfer all of Hart & Company's title, was sufficient to accomplish that result without indorsement. By the provision of the act of September 24, 1866, bills of lading and warehouse receipts are made negotiable and transferable by indorsement and delivery. The two documents are affected by the same provisions. The defendant contends that the act provides the only method of transferring title to the goods, namely, by indorsement and delivery of the document representing the goods, and that the absence of indorsement upon the receipts in this case, prevented the passage of title to Sloan. This position cannot be sustained. As to bills of lading, it has been held that where the intention of the parties is clear, delivery of a bill of lading without formal indorsement transfers the title to the goods : Richardson v. Nathan, 167 Pa. 513; Harrison v. Mora, 150 Pa. 481; Holmes v. German Security Bank, 87 Pa. 525. No reason is apparent

why the same rule should not apply to warehouse receipts. In the case before us, the plantiff is uncontradicted in his proof that he paid value and received the receipts with intent by both parties that title should pass.

The defendant, second, alleges that the receipts were sent to the broker in New York city with authority to sell only for cash, and that the delivery of the receipts to Hart & Company on the basis of credit, was beyond the agent's authority. It is true that Johnson repudiated the sale made to Hart & Company when first reported. Subsequently, however, he received the three notes of Hart & Company. These he retained until after maturity. Under the circumstances, even if the limitation of the authority of the agent in the first instance should be conceded, the defendant is estopped from repudiating the act of the agent which he has adopted. No one will doubt that if the notes had been paid upon maturity, the defendant would have been silent as to any lack of authority in his agent.

The defendant says, third, that the receipts were procured from him by fraud, and that all holders took them subject to the defense of fraud. There is discussion in the paper-books, of the law in respect to the negotiability of bills of lading and warehouse receipts. This can only have application in this case if the fact of fraud has been proven. The defendant attempted to prove fraud by his own testimony. His allegations are that Preyer, the broker, made false representations which induced the defendant to part with the warehouse receipts. The first misrepresentation alleged is that Preyer originally procured the receipts to be sent to him by stating that he had a cash customer for them in the Teeter Land and Improvement Company. Nowhere is this statement proved to have been false. The second alleged false statement by Preyer is that J. B. Hart & Company were one of the largest retail liquor dealers in New York city, and highly rated. Before Johnson accepted the notes of J. B. Hart & Company, he made some inquiry and could not find that they had any commercial rating at all. The misrepresentation, therefore, did not deceive him. With knowledge, he retained the notes and did not repudiate the sale. Johnson alleges, third, that when these notes were received by him, Preyer wrote that J. B. Hart & Company had purchased property to the extent of $32,000, for which cash was required, but that

they would be able to discount their paper in the course of ten days. The latter is but a statement of expectation. Failure to discount as anticipated would not amount to fraud, even if the statement in respect to discounting had been made by the proven authority of Hart & Company. The statement in regard to the purchase of the property is nowhere proven to have been false. There is no evidence (save that referred to above as to rating) which definitely tends to prove that any of the alleged statements were false when made by Preyer. Some ten days after the failure to pay the notes, Johnson made some investigations, with his counsel, in New York city. They visited both Preyer and Hart & Company. Both were uncommunicative as to the failure of the latter to pay the notes, and as to the disposition which had been made of the warehouse receipts. The place of business of Hart & Company, as described by the defendant, was far from impressive, when he saw it some four or five months after the notes were given. Hart's property was then, as Johnson says, in the hands of the sheriff. There appeared to Johnson ground to suspect that he had been unfairly treated. But circumstances warranting suspicion will not support an allegation of positive fraud. Nowhere does Johnson connect Hart & Company with the statements made by Preyer when the notes were forwarded. No attempt is made to connect Sloan, the present plaintiff, who paid money for the receipts when delivered to him by Hart & Company with the representations made by Preyer. In view of this condition of the defendant's evidence, the court below should have excluded from the jury the whole question of fraud. The submission of it, even if with erroneous instructions as to the law, worked no injury to the defendant.

This leads up to a consideration of the plaintiff's complaint of the action of the court below set out in

### THE APPEAL OF GEORGE B. SLOAN.

The evidence submitted in the effort to substantiate the allegations of fraud and the notice taken of it, in argument and in the charge, is alleged by the plaintiff to have resulted in injury to him in the rendition of a compromise verdict less than the amount to which he is entitled. If this result were clear, a retrial of this case should be ordered. The result is not a

compromise verdict. The plaintiff has not been injured by the amount of the verdict. In his case in chief he attempted to prove the market value of the particular whiskey called for by the warehouse receipts, which was described as the John T. Moss whiskey, made in 1895. Two witnesses were called by the plaintiff in his case in chief. The first, when asked the worth of this whiskey, said in reply, that he did not know anything about it. The second witness called had never seen any John T. Moss whiskey, and when pressed to give a valuation said, that he could not say what the value of the John T. Moss whiskey of 1895 would be. Both witnesses showed some knowledge of the value of the standard brands and the effect of age upon value, but from the testimony of neither could the jury have reasonably found the value of the Moss whiskey represented by the warehouse receipts in evidence. In rebuttal the plaintiff says, that when he took the receipts from Hart & Company, the latter claimed that the whiskey was worth fifty cents a gallon (although just bought from Johnson at forty). The plaintiff further says, that the lawyer he consulted expressed the opinion that the receipts were worth $1,000. The only definite testimony as to value was obtained from the defendant, Johnson, who said that the whiskey was worth about forty cents per gallon, if sold on the market. He knew the whiskey and for his valuation he gives reasons. The jury adopted his appraisement. The number of gallons was approximately 2,387.66, and at forty cents per gallon, this amounted to $955.06. The storage charges were $185. Deducting these from the value of the whiskey, leaves $770.06, the amount of the verdict. It is manifest from this result that the testimony and discussion in respect to the alleged fraud (which should have been excluded from the jury) did not affect the appraisement by the jury of the value of the whiskey represented by the certificates, and the plaintiff, therefore, suffered no injury. In fact, he demonstrates in his own paper-book, as appellee in the defendant's appeal, that the amount of the verdict was not the result of chance or compromise, but calculation based on Johnson's valuation.

There are errors in this record, but we are unable to see that a retrial of this case, although desired by both parties to the litigation, is necessary to an adjustment of their rights. The errors have not resulted in injury. The judgment entered in the court below is, therefore, as to both of the appeals, affirmed.