# Holmes, Lafferty & Co. *versus* The German Security Bank.

87 525
150 490
87 525
155 110:
87 525
167 517
87 525
20 SC 648

1. Where a bill of lading is attached to a draft as security for its payment and transferred for a valuable consideration, it is an appropriation of the property contained in the bill whether it is endorsed or not.

2. A bank discounted a draft with a bill of lading attached as security for its payment and sent it to a correspondent for collection. The commission firm to whom the property was consigned refused to pay the draft and afterwards received and sold the property and applied the proceeds to an old debt due them by the consignor. *Held*, that having notice of the draft and bill of lading before sale they were informed of the appropriation of the proceeds of sale and could not apply them to an old debt of their own.

November 7th 1878. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and TRUNKEY, JJ. WOODWARD J., absent.

Error to the Court of Common Pleas, No. 2, of *Allegheny county:* Of October and November Term 1878, No. 165.

Assumpsit by the German Security Bank of Louisville, Kentucky, against Holmes, Lafferty & Co.

On the trial of the cause it was proven that for several years J. M. Harper, of Louisville, Kentucky, had been shipping car loads of live stock to Holmes, Lafferty & Co., of Pittsburgh, to be sold on commission, and making drafts on them as soon as shipped, based on the bills of lading which accompanied the drafts. These drafts were usually discounted by the German Security Bank, and were always promptly paid until the draft for a certain car-load of hogs, shipped on August 9th 1877, by Harper to Holmes, Lafferty & Co.,

came due.   On the day of shipment Harper drew his draft on the latter firm for $1300, and the said draft was discounted by the German Security Bank on the faith of the bill of lading which was handed over to it.   The draft, with the bill of lading attached, was sent to the German National Bank of Pittsburgh for collection, was presented to Holmes, Lafferty & Co., on the 11th of August, and payment refused.   The hogs arrived on the 13th, were received by the defendants below, and by them sold.   At that time Harper was indebted to defendants on over-drafts on previous shipments to a larger amount than the proceeds of this last lot.   The proceeds of the shipment, after deducting freight, shipment charges, &c., amounted to $1299, which is the amount the bank claimed in their suit.   The defendants claimed to retain it on account of the indebtedness of Harper to them.   The bank based its claim to recover upon the ground that the transfer of the bill of lading, on the faith of which they discounted Harper's draft, gave them the right to the cargo or its proceeds; that the mere handing over of the bill of lading was a transfer or pledge of the hogs as security for the draft. The defendants below denied this, claimed that no title to the hogs or proceeds could pass without an actual delivery to the plaintiff of the property, and contended further that even if it could that the handing over of a bill of lading, itself not a negotiable instrument, and which had no assignment whatever endorsed upon it, could not work a transfer of the property.   The plaintiff below submitted points embracing the grounds upon which he sought to recover, and the court affirmed them.   It also refused to affirm the following two points, submitted by the defendants below, which embrace substantially the defence to the action :—

1. That the contract of shipment or bill of lading for the hogs in question not having been endorsed or assigned to the plaintiff by any words of transfer, but merely delivered without endorsement, no property in the hogs thereby passed to the plaintiff and the plaintiff cannot recover.

2. That as there is no evidence that plaintiff took possession of the hogs, no lien was acquired by it upon the hogs, by way of security for any money which may have been advanced to Harper, which would be valid against Harper's creditors.

There was also evidence on the trial that Holmes, Lafferty & Co. had agreed to accept Harper's drafts whenever the bills of lading accompanied them.   This was denied by the defendants, and the court in its charge held that the testimony was not material to the issue.   The jury found for the bank, and Holmes, Lafferty & Co. assigned the rulings of the court as error.

*Thomas C. Lazear*, for plaintiffs in error, contended that the action of the court in taking away the only disputed fact from the jury, and in holding that, as a matter of law, the defendants were

[Holmes *v.* German Security Bank.]

liable, was erroneous; that neither the draft by itself, nor in connection with the contract or bill of lading which accompanied it, vested in the bank any title to the hogs or gave it any lien upon them or upon their proceeds for the money advanced thereon to the drawer; that the draft alone had not this effect had been repeatedly decided, and the attaching and handing over to the bank of the contract of carriage along with the draft passed no better title nor created any better lien than did the draft itself; for the bill of lading was nothing more than an agreement between the shipper and the railroad company for the transportation of the hogs. It was a non-negotiable instrument, and mere manual delivery of it conveyed no interest whatever either in the hogs or their proceeds: Hopkins *v.* Beebe, 2 Casey 85; Farmers' & Mechanics' Ins. Co. *v.* Simmons, 6 Id. 302; Mrs. Greenfield's Estate, 12 Harris 240; Lloyd *v.* McCaffrey, 10 Wright 410; First National Bank of Mt. Joy *v.* Gish, 22 P. F. Smith 13. Even if it was a bill of lading the fact of its being not endorsed or transferred by any words of assignment precluded it from conveying any title, as, under the law, unless a bill of lading is endorsed, it passes no property: 1 Pars. Cont., § 239; Stone *v.* Snift, 4 Pick. 389; Allen *v.* Williams, 12 Id. 297; Buffington *v.* Curtis, 15 Mass. 528; Bell *v.* Moss, 5 Whart. 205. And the hogs not having been taken into possession by the plaintiff, and in fact, there being nothing in the transaction to indicate that it was the intention of the parties that he should take possession of them, no title to or lien upon them could possibly be acquired as against Harper's other creditors: Clow *v.* Woods, 5 S. & R. 275; Wells *v.* Becky, 1 P. & W. 57; Fry *v.* Miller, 9 Wright 443; Bowen *v.* Burke, 1 Harris 149; Welsh *v.* Bell, 8 Casey 13.

*Slagle & Wiley*, for defendants in error.—A bill of lading being symbolical of the property described in it, like the property it represents, may be transferred by delivery merely; and this is so without regard to the presence or absence of words of negotiability on its face. When the vendor of goods consigns them, taking a bill of lading from the carrier, and intending to reserve the right of control over them, at the same time draws upon the purchaser for the price, and delivers the bill of lading attached to an endorsee, for a valuable consideration, the consignee, upon receipt of the goods, takes them subject to the right of the holder of the bill of lading, to demand payment of the bill of exchange, and cannot retain the price of the goods on account of a debt due to him by the consignor: Emory & Sons *v.* Irving National Bank, 25 Ohio 360; Bank of Rochester *v.* Jones, 4 Comstock 497; Bissell *v.* Steel, 17 P. F. Smith 445.

[Holmes *v.* German Security Bank.]

The judgment of the Supreme Court was entered November 18th 1878,

PER CURIAM.—The bill of lading was attached to the draft in this case as a security for its payment.    It was therefore evidence of an appropriation of the proceeds of sale of the property contained in the bill of lading, whether the bill was endorsed or not.    The consignment to the defendants was for sale only, and therefore when they had notice of the draft and bill of lading before sale, they were informed of the appropriation of the proceeds of sale, and could not apply them to an old debt of their own.

Judgment affirmed.