J. H. Richardson & Co. *v.* Marks Nathan. Atlas National Bank of Chicago's Appeal.

167    513
20 SC ¹648

*Bill of lading—Foreign attachment—Sale—Acts of June* 13, 1874, *and Sept.* 24, 1866.

An owner of goods delivered them to a railroad company in Chicago, and received a bill of lading which he indorsed " Deliver to the order of J. H. Richardson & Co." He drew a draft on Richardson and Co., which a bank discounted, taking the bill of lading as collateral security for the payment of the draft. The draft was sent to Richardson & Co. at Pittsburg, who refused to pay it, and it was returned to Chicago, with the bill of lading. The indorsement on the bill of lading was canceled, and a blank indorsement made. Subsequently Richardson & Co. attached the goods in Pittsburg under a foreign attachment. The bank obtained leave to intervene as garnishee, and gave bond as provided by the act of June 13, 1874, P. L. 285. The bank having obtained the goods by dissolution of the attachment, sold them without an order of court, at public auction, after having given due notice to Richardson & Co. of the time and place of sale. The goods brought less than their actual value. In an action by Richardson & Co. against the bank to recover the difference between the actual value of the goods and the price obtained at the sale, *Held* (1) that the indorsements on the bill of lading did not affect the rights of the bank; (2) that as the intention of the parties was to make the goods a pledge for the repayment of the sum advanced on the draft, delivery without indorsement was sufficient to accomplish the purpose intended; (3) that the effect of the delivery was to invest the bank with the rights of a purchaser of the property, so far as it might be necessary to exercise such rights for the bank's protection; (4) that under the circumstances an order of court was not necessary to authorize and validate the sale.

VOL. CLXVII—33

After the seizure and prior to the dissolution of the attachment, the property was in custodia legis and could not be lawfully sold without an order of the court, but after the attachment was dissolved the rights and powers of the appellant to and over it were the same as before the seizure, subject only to the duty of retention imposed by its bond. Per Mc-COLLLUM, J.

Argued Oct. 26, 1894. Appeal, No. 147, Oct. T., 1894, by Atlas National Bank of Chicago, from judgment of C. P. No. 1, Allegheny Co., Sept. T., 1891, No. 62, and Dec. T., 1890, No. 956, for plaintiff on point reserved. Before STERRETT, C. J., WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Reversed.

Foreign attachment.

A case stated in the nature of a special verdict was agreed upon by counsel and was as follows:

" Two car loads of iron, amounting to 890,700 lbs. were seized while in the possession of the Pennsylvania Railroad Co. by the sheriff of Allegheny county on an attachment of J. H. Richardson & Co., the plaintiff herein, against Marks Nathan, at No. 956, December term, 1890, Common Pleas No. 1, of Allegheny county ; that said iron was shipped by Marks Nathan to himself as consignee at Pittsburg ; that two bills of lading were issued for the same, which were not indorsed ' Not negotiable ' and which were made ' to the order of Marks Nathan, notify J. H. Richardson & Co. ; ' that said bills of lading were indorsed ' Deliver to the order of J. H. Richardson & Co.' signed, ' Marks Nathan H. ; ' that they were thus indorsed when the attachment was served, but were afterwards returned to Chicago, when said indorsement was erased and they were indorsed in blank by Marks Nathan, personally.

" That on Nov. 24, 1890, the Atlas National Bank received from Marks Nathan, the above named defendant, a draft for $531.41 on J. H. Richardson & Co., payable on demand to the order of the Atlas National Bank, to which draft were attached the above described bills of lading, issued by the Pennsylvania Railroad Company, a common carrier, for which draft, with bills of lading attached, as aforesaid, as collateral security, the Atlas National Bank paid on the day aforesaid the sum of $531.41. That said draft and bills of lading were duly for-

warded to the Pittsburg National Bank of Commerce for collection, and presented to J. H. Richardson & Co., the plaintiff, on Nov. 28, 1890.  That at the time of said presentation the bills of lading were indorsed 'Deliver to the order of J. H. Richardson & Co.,' and signed, 'Marks Nathan,' but that plaintiff refused to accept or pay for the same, but on the same day issued this foreign attachment, which was served by the sheriff, and the Pennsylvania Co. aforesaid summoned as garnishee, and said scrap, etc., placed in the warehouse of Union Storage Co., at Pittsburg.

"That the draft and bills of lading were returned to Chicago, and said indorsement to J. H. Richardson & Co. erased, and they were then and there indorsed in blank by Marks Nathan, and again returned to the Pittsburg National Bank of Commerce and presented to plaintiff, J. H. Richardson & Co., who again refused to accept or pay the same.

"That the Atlas National Bank, on Dec. 20, 1890, presented its petition to said court, with such representations, as by reference to said petition hereto attached will be observed, [see pages 1 and 2 of appendix,] and prayed that the name of said Atlas National Bank might be added to the record as garnishee, that a rule might be granted upon the plaintiff to appear and show cause why said attachment should not be dissolved upon its giving security, in accordance with the provisions of the act of assembly of June 13, 1874, to which plaintiff appeared and made answer pro ut [see pages 3–6 appendix] ; whereupon the Atlas National Bank entered into security in the sum of $1,000, conditioned, to wit: 'If so much of the said scrap steel, rails and ends, as shall remain after the settlement or payment thereout of any lien upon any of the said scrap steel, rails and ends created by the advance of money or credit by the said bank, and also all prior liens for storage, freight and all charges, shall be retained by the hands of said bank, to answer if plaintiff shall have execution of any judgment of the effects of defendant in the action, attached as aforesaid, or to abide the further order of court; then the bond to be void.'  That the property was then taken by the Atlas National Bank, which was made garnishee as prayed, and the said property was subsequently sold by the said bank at public sale, without order of court, but with notice to plaintiff of the time and place of sale, and was

sold for the price or sum of $523.03, which garnishee received and applied; first to the payment of freight and other charges of storage, etc., to the amount of $107.11, and the remainder, $416.03, upon its claim, leaving no balance in its hands; that the property attached and thus sold at the time it was attached was of the value of $880.98; that a verdict was taken by the court for $375.05 in favor of the plaintiff, subject to the opinion of the court, whether plaintiff was entitled to recover in this suit."

STOWE, P. J., filed the following opinion:

" When the defendant undertook to sell the property attached by it without authority from the court, it did that which it had no right to do, even with notice to plaintiff, and thus so doing, it rendered itself liable for the actual value of the goods sold, and not merely what they sold for at public sale. From this it had a right to have deducted the amount of its lien and proper charges, which, by this finding of the jury, leaves defendant liable for $375.05, for which sum it is now ordered that judgment be entered upon the question of law reserved in favor of plaintiff, with costs on payment of the verdict fee."

*Error assigned* was above order.

*Charles P. Orr, Thomas C. Lazear* with him, for appellant.— The attachment being dissolved by order of court under the act of 1874, the goods were no longer subject to the control of the attaching creditor, the sheriff of the court. The attaching creditor received notice of the public sale of the goods. His rights are no higher or greater than the pledgor's: Good v. Grant, 76 Pa. 52; Baugh v. Kirkpatrick, 54 Pa. 84.

Having paid for the draft the bank became the owner of the rails until it was reimbursed its advancement: Dows v. Nat. Exchange Bank, 1 Otto, 618; Tilden v. Minor, 45 Vt. 196; The Marine Bank v. Wright, 48 N. Y. 1.

The insertion of the consignee's name in the bill of lading gives him no right to the goods which can be asserted against the superior equity of a bona fide advance to the consignor upon the security of the bill of lading, even though the consignor be indebted to the consignee upon a general account in a sum greater than the value of the goods: Bank of Rochester

v. Jones, 4 N. Y. 497 ; Allen v. Williams, 12 Pick. (Mass.) 297 ;
First Nat. Bank v. Crocker, 111 Mass. 163 ; Holmes, Lafferty
& Co. v. German Security Bank, 87 Pa. 525 ; Harrison v. Mora,
150 Pa. 490.

*A. Leo Weil,* for appellee.—The proceedings under the act of
1874 by the defendant in the court below were unauthorized.
Appellant had no right or authority to sell the " scrap steel rails
and ends " unless authorized to do so by an order of court.
The act makes the transferee the owner for some purpose,
not for all ; he is only owner so as to give validity and security
to his lien. Appellant was not the transferee of said bills of
lading at the time the goods were attached : Holmes v. Bailey,
92 Pa. 57 ; Holmes v. Bank, 87 Pa. 525.

The right to proceeds of goods consigned to another or to a
lien on the price, gives no lien on the goods : Chilton v. Bar-
rington, 15 C. B. 95 ; Holland v. Humble, 1 Starkie, 143 ;
Bryans v. Nix, 4 M. & W. 775.

Under the plea of nulla bona, appellant proved a lien, and
therefore the judgment for plaintiff entered by the court below
was right : Bissell v. Steel, 67 Pa. 443 ; Allen v. Bank, 57 Pa.
139 ; Reed v. Penrose's Exrs., 36 Pa. 214 ; 1 Troubat & Haly,
700, sec. 1202.

OPINION BY MR. JUSTICE McCOLLUM, April 29, 1895 :

We think the indorsements on the bills of lading cannot,
under the circumstances shown by the special verdict, be justly
considered as injuriously affecting the rights of the appellant
to the property specified in the bills. The delivery of them
was obviously made, accepted and intended as a pledge of the
property as security for the sum advanced or paid on the draft
to which they were attached. The purpose of the parties be-
ing evident, delivery without indorsement was sufficient to
accomplish it : Holmes, Lafferty & Co. v. The German Secur-
ity Bank, 87 Pa. 525. The indorsements which are thought
by the appellee's counsel to afford his clients some advantages
and to abridge the rights of the appellant in this contest, were
in the following words, to wit : " Deliver to the order of J. H.
Richardson & Co." These indorsements were probably re-
garded by the consignor as nothing more than a direction to

the pledgee to deliver the property specified in the bills, to the appellees on their acceptance and payment of the draft, together with charges for transportation, storage, etc.   His cancellation of the indorsements on their refusal to honor his draft is in accord with this view and with what we have seen was his purpose in delivering the bills.   The indorsements were not intended to qualify the rights of the pledgee and we cannot assent to a construction of them which would defeat the common purpose of the parties to the transaction, which, we think, should be considered in the determination of this issue as if the indorsements had not been made.   Thus considered, the effect of it was to invest the appellant with the rights of a purchaser of the property, so far as it might be necessary to exercise such rights for its protection: 2 Am. & Eng. Ency. of Law, p. 243, and cases there cited.   In other words, the appellant, after the delivery of the bills, must be deemed and taken to have been the owner of the property for the accomplishment of the purpose for which it was pledged: Act of Sept. 24, 1867, P. L. 1363, Purd. Dig. p. 145.   Having acquired this position by virtue of the delivery to it of the bills of lading it was made a garnishee of the property under the act of June 13, 1874, P. L. 285, Purd. Dig. p. 146, and as such applied for and obtained, in conformity with its provisions, a dissolution of the attachment.   The dissolution thus effected released the property from the grasp of the attachment, and the garnishee sold it at public auction after having given due notice to the appellees of the time and place of sale.   The latter alleging that the property was worth more than it was sold for were allowed to recover in this proceeding a judgment for the difference between the sum obtained for it and its actual value, on the ground that the sale was made without an order of court.   Was such an order necessary to authorize and validate the sale? We think it was not.   A sale of the property or so much thereof as may be necessary to satisfy liens for advances and for freight and storage charges is evidently contemplated by the act under which the appellant became a party to the suit. The bond required on the dissolution of the attachment is in accord with this view.   It provides for the retention by the garnishee for the purpose stated in it, of so much of the property or its proceeds as shall remain after the sale of the whole

or part of it and the payment of such liens. After seizure and prior to the dissolution of the attachment, the property was in custodia legis and could not be lawfully sold without an order of court, but after the attachment was dissolved the rights and powers of the appellant to and over it were the same as before the seizure, subject only to the duty of retention imposed by its bond. It follows from what has been said, that we regard the sale made as valid, and that the appellees cannot recover from the appellant the difference between the value of the property, and what it sold for. Ample opportunity was afforded them to become bidders at the sale, and if they had availed themselves of it, they would have acquired the property for less than its value or compelled the successful bidder to pay a fair price for it.

Judgment reversed.