In re E. REBOULIN FILS & CO., Inc.

(District Court, D. New Jersey. July 23, 1908.)

1. CARRIERS (§ 51*) — BILL OF LADING — CONSTRUCTION AND OPERATION—EVIDENCE OF TITLE.

Mere possession of a bill of lading is evidence of title in the holder, either general or special, to the goods embraced therein, and that the bill is not made nor indorsed to such holder is not material.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 148; Dec. Dig. § 51.*]

2. BANKRUPTCY (§ 140*) — PROPERTY PASSING TO TRUSTEE—PROPERTY HELD AS BAILEE.

Petitioners entered into an arrangement to furnish money to the bankrupt corporation for use in its business of importing fruits in brine, pursuant to which, on a purchase of goods in France, the seller made a draft on petitioners' Paris house and attached thereto an invoice and bill of lading, which, on payment of the draft, were forwarded to petitioners in New York. On arrival of the goods, they and such papers were delivered to the bankrupt on its execution of a trust receipt, by which it agreed to hold the merchandise described therein on storage as the property of petitioners, with power to sell the same and turn over the proceeds to petitioners until the amount of the draft and shipping costs was repaid. *Held*, that the title to such goods did not pass to the bankrupt, but remained in petitioners, who were entitled to recover the same, or their proceeds, from the bankrupt's trustee, who had sold them, on their proper identification.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 193; Dec. Dig. § 140.*]

In Bankruptcy. On exceptions to master's report.

Stern & Rushmore (Eldon Bisbee, of counsel), for petitioners.
W. Benton Crisp, for trustees in bankruptcy.

CROSS, District Judge. John Munroe & Co. filed their petition in this court for the possession of 500 casks of cherries, or the proceeds thereof, which cherries it was claimed were in specie in the hands of the bankrupt at the time the petition in bankruptcy was filed. The petition was duly answered, and the matters involved referred to a referee in bankruptcy as special master, to take testimony and report to the court what order should be made in the premises. The master has filed two reports, both of which were adverse to the petitioners' claim. After the filing of the first report, upon the application of the petitioners, who expressed a desire to take further testimony, the matter was referred back to the master for that purpose, after which, as already stated, he again reported adversely to the petitioners. Upon the coming in of his second report, the petitioners filed numerous exceptions thereto, and the questions thereby raised furnish the subject-matter for present consideration. It will be unnecessary, however, to consider the exceptions specifically, as their general object is to show that the master's report is wholly erroneous and should be reversed.

It appears from the evidence that the bankrupt, desirous of importing cherries in brine and preserved fruits, applied to the petitioners, who are bankers in New York City, for a credit wherewith to finance

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

its importations. A representative in France of the bankrupt was to order for its account the goods for importation. Thereupon the vendors of the merchandise were authorized to draw upon the Paris house of the petitioners, which drafts, pursuant to the agreement of the parties ·in· ·establishing the credit, were in each case to be accompanied by certified invoices, insurance certificates, and bills of lading to the order of the petitioners. When the drafts were accepted in France, the above documents, including the bills.of lading, were to be forwarded to the petitioners. Upon the arrival in New York of the goods, a memorandum was presented to the bankrupt, giving the amount of the draft, and of the charges, which had been accepted for its account, and the shipping documents and bills of lading were handed to the bankrupt, who simultaneously in each instance executed and delivered to the petitioners, in return therefor, a trust receipt of the following general form:

"New York, Sept. 5, 1905.,

"Received from John Munroe & Co., of New York, the merchandise specified in the bill of lading dated Marseilles, Aug. 14, 1905, and shipped per S. S. Germania, namely, 38 casks fruits in brine, marks and numbers being as stated in said B/L, and in consideration thereof we agree to hold said merchandise on storage as their property, in trust, until the acceptance of Munroe & Co., of Paris, France, given or to be given as the purchase money of said merchandise under a credit issued to us, and any other indebtedness to said Munroe & Co., shall have been paid or satisfactorily provided for.

"It is understood that we shall be at liberty to sell the said merchandise and hand the proceeds, when received, to said·John Munroe & Co., as security for due provisions for said acceptances and indebtedness, and also that we shall keep the same insured against fire, payable, in case of loss, to said John Munroe & Co., who are not to be chargeable with any expenses incurred thereon. The intention of this arrangement is to protect and preserve unimpaired the title of said John Munroe & Co. to said merchandise.

"E. Reboulin Fils & Co., Inc.,

"No. ———.                                           S. Lamy, Secretary."

Under the foregoing arrangement the petitioners accepted drafts amounting to nearly 120,000 francs, of which amount they have been repaid about 5,000 francs. After the bankruptcy proceedings were instituted, an officer of the bankrupt, together with a representative of the petitioners, identified certain casks of cherries, then in the hands of the bankrupt, as a part of those which had been imported upon the petitioners' credit under the circumstances above outlined. These casks were subsequently sold by virtue of an order of this court, and the proceeds specially deposited in bank pursuant to a stipulation of the parties hereto. The goods, when imported, appear to have been invoiced to the bankrupt, and the bills of lading therefor were, for the most part, either drawn to the order of the bankrupt directly, or were made "to order" and indorsed by the shipper, "Consigned to the order of Messrs. E. Reboulin Fils & Co." In three cases, however, they were drawn to order and indorsed in blank by the shipper; but in every case the invoice and bill of lading, no matter how drawn, were, pursuant to the above agreement, delivered to and held by the petitioners as security for advances made on account thereof. The evidence in general establishes this fact beyond controversy, and the so-called trust receipts in and of themselves confirm it. This being so, under all of

the authorities the petitioners had either a general or special property in the merchandise thereby represented, which was valid against all the world. So long as the petitioners held, as they did, the invoices and bills of lading, whether indorsed or unindorsed, or however drawn, neither the bankrupt nor any one else could lawfully have obtained possession of the goods represented thereby. That the invoices were made to the bankrupt is of no importance whatever. This was settled in Dows v. National Exchange Bank, 91 U. S. 618, 23 L. Ed. 214, where the matter is discussed somewhat at length. So, too, the fact that the bills of lading were not made or indorsed to the petitioners is of no account, where, as in this case, the evidence shows that, pursuant to the agreement, they should have been so made, and that they were as a matter of fact delivered to the petitioners and held by them as security for their advances.

Mere possession of a bill of lading is evidence of title in the holder to the goods embraced therein. It is a symbol of the goods, and everywhere and always stands for the merchandise therein specified, and evidences title, either general or special, in the lawful holder thereof. It seems unnecessary to cite authorities upon this point. They are almost numberless. Reference will therefore be made to four or five only. Dows v. National Exchange Bank, supra; Pollard v. Vinton, 105 U. S. 7, 26 L. Ed. 998; Farmers' & Mechanics' Bank v. Logan, 74 N. Y. 568; Moors v. Kidder, 106 N. Y. 32, 12 N. E. 818; National Newark Banking Co. v. D., L. & W. R. R. Co., 70 N. J. Law, 774, 58 Atl. 311, 66 L. R. A. 595, 103 Am. St. Rep. 825. But the authorities go still farther, and hold that property in the merchandise will pass by delivery of a bill of lading drawn to order without indorsement of the bill. Bank of Rochester v. Jones, 4 N. Y., 497, 55 Am. Dec. 290; City Bank v. R., W. & O. R. R. R. Co., 44 N. Y. 136; Merchants' Bank v. Union R. & Transp. Co., 69 N. Y. 373; Richardson & Co. v. Nathan, 167 Pa. 513, 31 Atl. 740; Holmes et al. v. German Security Bank, 87 Pa. 525; Holmes v. Bailey, 92 Pa. 57. Under the evidence in this case the petitioners had property rights in these goods, at least up to and until the invoices and bills of lading were turned over to the bankrupt, and it only remains, therefore, to consider whether they lost their title by such surrender.

By virtue of the delivery of the bills of lading to the petitioners at the time they made the advances in question the petitioners had, as we have seen, property rights, either general or special, in the goods in question, and were entitled to hold them until such advances had been repaid. They could have taken the goods from the vessel and either warehoused or sold them. This was the situation at the time when the several so-called trust receipts were executed. Without the execution of those receipts, or other like agreements, the title of the petitioners would have been lost upon the unqualified surrender, or indorsement and surrender, of the bills of lading. By such acts their title to or property, of whatever nature, in the goods would have been determined. To prevent this the transfer of the bills of lading was limited and qualified by the trust receipts executed and delivered simultaneously with the surrender of the bills of lading. The indorsed bills of lading and the trust receipts, having been contemporaneously

delivered, must be construed together, and, so construed, the indorsement and delivery were qualified and not absolute. The effect was not different than it would have been had the indorsements of the bills of lading contained the very language of the trust receipts. It is, moreover, scarcely conceivable that the petitioners, having the title, would, without payment of their advances, voluntarily have surrendered it. No reason for such action is manifest, or even suggested. But an examination of the trust receipts discloses no intention on the part of the petitioners to waive or surrender their property in the goods, but rather a clear intention to retain such property, which intention, moreover, was fully acquiesced in and recognized by the bankrupt. The bankrupt agreed thereby to hold the property on storage as the petitioners' property, and expressly assumed an attitude of trust in respect thereto, the terms of which were explicit and controlling. Furthermore, as already stated, the receipts contained an express recognition of title in the petitioners, and an undertaking that it should remain unimpaired, notwithstanding the substitution of the trust receipts for the bills of lading.

Since, then, the petitioners had title under the bills of lading, how can it be argued, from anything found in these receipts, that such title was transferred by them to the bankrupts? The receipts do not, in my opinion, contain a single word even looking in that direction. Clearly no title to the goods passed, but only their custody—a custody which, if, and in so far as, it constituted possession, was in law the possession of the petitioners. The bankrupt gained no property rights by the receipts, nor did the petitioners part with any. Beyond retaining their custody for the petitioners and a power of sale for their account, the bankrupts could do nothing with the goods without a violation of their trust agreement. The learned referee has dealt with this subject as if the preservation of the petitioners' rights required that a chattel mortgage should have been executed and filed in the proper place of registry. I am unable to assent to this view. Such a view assumes that the bankrupt obtained title when the bills of lading were surrendered; but it has been shown that it did not. No loan was made on the faith of the trust receipts, nor were any property rights lost or acquired thereby. No element of a conditional sale or chattel mortgage appears in the transaction. Consequently none of the requisites to the validity of such instruments was required. This proposition was dealt with in First National Bank of Cincinnati v. Kelly, Sheriff, 57 N. Y. 34, 36. The effect of trust receipts, similar to those in question, has been considered, and their validity upheld, in various cases, among them Brown v. Billington, 163 Pa. 76, 29 Atl. 904, 43 Am. St. Rep. 780; New Haven Wire Cases, 57 Conn. 372, 18 Atl. 266, 5 L. R. A. 300; Moors v. Wyman, 146 Mass. 60, 15 N. E. 104. It is undoubtedly true that upon the transfer of the bills of lading the petitioners, instead of requiring the execution of trust receipts, maintaining and continuing their property rights, might have allowed such rights to pass to the bankrupt upon its execution of a chattel mortgage upon the property. It is not, however, necessary to speculate upon what might have been

done, but only to consider what actually was done by the parties at the time.

In view of what has been said, I think the conclusions of the referee were erroneous; and must be set aside; but inasmuch as he has found, as a matter of fact, that 429 casks of cherries which were embraced in the bills of lading held by the petitioners have been duly identified and were found in specie in the hands of the bankrupt at the time the bankruptcy proceeding was instituted, an order will be made directing the payment to the petitioners of the proceeds of their sale.