## In re BETTMAN–JOHNSON CO.

### Petition of GOLDMAN, SACHS & CO.

#### (Circuit Court of Appeals, Sixth Circuit. May 7, 1918.)

#### No. 3096.

**1. BANKRUPTCY ☞144—PROPERTY OF ESTATE—CUSTODY OF STATE COURT.**

Where petitioner, which delivered property to the bankrupt under a trust receipt, demanded the same from the receiver appointed by the state court to take possession of the bankrupt's property, as well as the receiver in bankruptcy, petitioner's rights were not affected by its consent to sale of the property by the receiver in bankruptcy.

**2. BANKRUPTCY ☞140(3)—PROPERTY OF ESTATE—TRUST RECEIPTS—EFFECT.**

Trust receipts, whereby bankers, who advance funds to enable merchants and manufacturers of limited means to acquire property, retain title to the property purchased, when founded in good faith, should be upheld against general creditors of the manufacturers, etc., unless contrary to some local rule.

**3. SALES ☞450—CONDITIONAL SALES—RECORDING.**

Gen. Code Ohio, § 8568, as to sales of personal property on condition, applies to a transaction where a banker advanced funds to purchase personal property and delivered the same to a manufacturer, under a trust receipt even though the amount was not to be repaid in installments.

**4. BANKRUPTCY ☞9(2)—STATE LAWS—RIGHTS OF PROPERTY.**

The rights of a banker, who advanced funds to purchase property and delivered the same to a manufacturer under a trust receipt, are, on bankruptcy of the manufacturer, governed by the state laws.

**5. SALES ☞461—CONDITIONAL SALES—NATURE OF CONTRACT.**

Regardless of the stipulations of a contract, or how much the conditional character of a sale may be disguised, the courts will inquire into the real nature of the transaction, so that the purchaser and his creditors may not be deprived of the benefit of the provisions of Gen. Code Ohio, § 8568, with respect to conditional sales.

**6. SALES ☞474(2)—CONDITIONAL SALES—STATUTES.**

Gen. Code Ohio, § 8570, providing for restitution of sums paid, etc., in case a seller retakes property sold under a conditional sale contract, is not exclusive; hence a banker, having advanced funds to purchase property and delivered the same to a manufacturer under a trust receipt that was not recorded as required by section 8568, cannot, though no payment had been made, retake the property as against the creditors of the manufacturer.

**7. SALES ☞479(15)—CONDITIONAL SALES—REMEDY OF VENDOR.**

In case of a conditional sale, a seller may recover a judgment at law on the unpaid installments of the purchase price, and cause the goods or any property of the buyer to be sold under execution, without resorting to the remedy of retaking the property, as provided by Gen. Code Ohio, § 8570.

**8. SALES ☞479(11)—CONDITIONAL SALES—REMEDIES OF SELLER.**

A seller under a conditional sale contract, instead of following the remedy of retaking the property dealt with by Gen. Code Ohio, § 8570, may resume possession, perfect the buyer's title for the purpose of increasing his security, resell the property on account of the buyer, and recover any amount still unpaid.

**9. SALES ☞479(17)—CONDITIONAL SALES—REMEDY OF SELLER.**

Where property is sold under a conditional sale contract, the seller, in addition to the right of retaking the property dealt with by Gen. Code Ohio, § 8570, may foreclose his equitable lien.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

10. SALES ☞472(1)—CONDITIONAL SALES—RIGHTS OF BUYER.

Gen. Code Ohio, § 8570, relating to conditional sales changed the earlier rule, and gives a buyer, who has paid part of the contract price, an interest in the property, which may be sold or mortgaged, and which the seller is bound to respect.

11. SALES ☞474(2)—CONDITIONAL SALES—VALIDITY.

Contracts of conditional sales are good as between the parties, though not recorded; but, unless Gen. Code Ohio, § 8568, is complied with, the rights of the seller are inferior to those of creditors, who have fastened upon the property by some specific lien.

12. RECEIVERS ☞67—PROPERTY VESTING IN RECEIVER—TITLE OF DEBTOR.

The appointment of a receiver, who took charge of the property of an Ohio manufacturer, including that which had been delivered under a trust receipt, which was neither verified nor filed as required by Gen. Code Ohio, § 8568, fastens the claims of creditors upon it as effectually as though the creditors had seized the same under attachment or levy of execution.

13. BANKRUPTCY ☞140(3)—TRUSTEES—RIGHTS OF.

Under Bankruptcy Act July 1, 1898, § 47a, (2), as amended by Act June 25, 1910, § 8, a trustee in bankruptcy has the rights of an execution creditor, and where the appointment of a receiver in the state court fastened the claims of creditors upon property received by the bankrupt under a trust receipt, the trustee in bankruptcy may assert such claims against the one holding the trust receipt.

Appeal from the District Court of the United States for the Western Division of the Southern District of Ohio; Howard C. Hollister, Judge.

In the matter of the bankruptcy of the Bettman-Johnson Company. Intervening petition by Goldman, Sachs & Co., asserting priority by virtue of a trust receipt, under which the petitioner delivered property to the bankrupt. From an order of the District Court, affirming a decision of the referee denying the petition, petitioners appeal. Affirmed.

Stricker & Johnson, of Cincinnati, Ohio, and Steinhardt & Goldman, of New York City (Sidney G. Stricker, of Cincinnati, Ohio, of counsel), for appellants.

B. L. Heidingsfeld, and Pogue, Hoffheimer, & Pogue, all of Cincinnati, Ohio (Harry M. Hoffheimer, of Cincinnati, Ohio, of counsel), for appellee.

Before KNAPPEN and DENISON, Circuit Judges, and SATER, District Judge.

SATER, District Judge. The plaintiffs, Goldman, Sachs & Co., assert by intervention the right, by virtue of the unverified and unfiled trust receipt held by them, to be paid the full purchase price of cherries imported from Italy by the defendant, the Bettman-Johnson Company, now bankrupt, for use in its manufacturing business. The referee, Charles T. Greve, in an exhaustive and learned opinion, denied their claimed right to priority of payment and ruled that, in view of the broad scope of the Ohio conditional sales act (section 8568, Ohio General Code), their position is that of a general creditor only.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The case is here on a challenge to the correctness of the judgment of the District Court affirming the referee.

The defendant, desiring cherries in brine for its manufacturing business, obtained, on April 24, 1913, from the plaintiffs a letter of credit, by the terms of which the defendant's agent was authorized to draw on their correspondent bank at Naples, Italy, on account of the defendant, for any sum or sums not exceeding in all 100,000 lire, for cherries to be shipped in bond to Cincinnati. The bill of lading was to be issued to the order of and forwarded to the plaintiffs along with the consular invoice, pure food certificate, and marine insurance to be effected by the defendant. All drafts, the remaining bills of lading, abstracts of invoices, and weigher's certificates were to be presented to the drawee. The plaintiffs obligated themselves to honor, when presented by the drawee, all such bills, drawn in compliance with the terms of the letter of credit.

In consideration of the issuance of such letter of credit, the defendant accepted, at Cincinnati, Ohio, all of its terms and conditions, and, to meet the bills that might be drawn thereunder and the plaintiffs' commission of three-fourths of 1 per cent., bound itself to furnish plaintiffs, prior to the maturity of such bills, satisfactory demand bills of exchange or to pay the equivalent in cash. It further gave a specific claim and lien on all policies of insurance, bills of lading, and goods purchased, as well as on the proceeds thereof, on account of which the plaintiffs or their correspondent bank became liable, with full power and authority to take possession and dispose of the same. In case the defendant should fail to provide for the payment of any draft or drafts made under the letter of credit, the balance of the credit unused should immediately become due and payable, and with all unpaid drafts should thereafter, until paid, bear interest at the rate of 6 per cent. per annum. All securities deposited by the defendant under the agreement were to be held and applied by plaintiffs on any of the defendant's existing or future indebtedness or liability. It was further agreed that neither the plaintiffs nor their correspondent should be held responsible for delay, or deviation from instructions, or any loss due to any difference in the quality or character of the goods shipped from what was stipulated and expressed in the invoice, or bills of lading, or other instruments relating to the drafts, or for the correctness or genuineness of documents representing shipments, or signatures thereto.

In June, 1913, the defendant purchased in Italy through its agent, and shipped in bond to Cincinnati to the order of the plaintiffs, 373 barrels of cherries in brine, in payment for which the agent gave a four-months draft on the Naples bank, which draft was by such bank duly accepted. The bills of lading were made to the order of the plaintiffs, to whom the cherries were shipped, and to whom one bill of lading, with a consular invoice and pure food certificate, were forwarded. The remaining bills of lading, with abstracts of invoices and weigher's certificates, were attached to the draft. Marine insurance, with loss payable to the plaintiffs, was effected by the defendant. On or about June 20 the plaintiffs indorsed and surrendered to the

defendant the bill of lading covering the cherries, at which time the plaintiffs delivered and the defendant received them. As a part of the same transaction the defendant executed and delivered to plaintiffs at Cincinnati a trust receipt, of which the following is a copy: .

Received from Goldman, Sachs & Co. the goods and merchandise, their property, specified in the bill of lading per S. S. Venesia dated Naples, June 4, 1913, which goods and merchandise are marked and numbered as follows:

B. J. C. 1/373.

373 Barrels of Cherries in Brine

—and in consideration thereof I (we) hereby agree to hold said goods and merchandise in trust for them and as their property, with liberty to sell the same for their account or to manufacture and remanufacture the same without cost or expense to them and I (we) also agree to keep said goods and merchandise and the manufactured product and proceeds thereof, whether in the form of money or bills receivable, separate and capable of identification as their property, and to hand the proceeds to them to apply against the acceptance of Banca Commerciale Italiana, Naples, on my (our) account under the terms of letter of credit No. 3130, issued for my (our) account and for the payment of any other indebtedness of mine (ours) to Goldman, Sachs & Co. or to Banca Commerciale Italiana, Naples.

Goldman, Sachs & Co. may at any time cancel this trust and resume possession of said goods and merchandise, or the manufactured product or of the proceeds of such of the same as may have been sold, wherever the said goods or merchandise or said proceeds may then be found, and in the event of any suspension, proceedings in bankruptcy, failure or assignment, for benefit of creditors on my (our) part, or of the nonfulfillment of any obligation or of the nonpayment at maturity of any acceptance made by me (us) under said credit or under any other credit issued by Goldman, Sachs & Co. or Banca Commerciale Italiana, Naples, on my (our) account, or of any indebtedness on my (our) part to either of them, all obligations, acceptances and liabilities whatsoever shall thereupon (with or without notice) at once, at their option, mature and become due and payable.

I (we) agree, at my (our) expense, to keep the said goods and merchandise and the manufactured product thereof, while in my (our) possession, fully insured against loss by fire, to make the loss, if any, payable to Goldman, Sachs & Co. and to hand the policies of insurance to them; and the insurance money received for any loss shall be subjected to the trust herein contained in the same manner as the goods and merchandise themselves.

Cincinnati, June 20th, 1913.

[Signed]   The Bettman-Johnson Co.,
A. Seasongood, Vice-Pres.

The plaintiffs did not verify and file the trust receipt, or other instrument relating to the transaction, in the office of the recorder of the county in which Cincinnati is situated and in which the defendant had its residence and principal place of business. The cherries, after their arrival at Cincinnati and until after the commencement of the bankruptcy proceedings against the defendant, remained in its possession or that of the receiver appointed for it by the state court on July 17, 1913. The receiver refused a demand made on him by the plaintiffs for the surrender of the cherries. On August 16 a petition in bankruptcy was filed against the defendant. The present trustee was named as receiver and took possession of all the bankrupt's property. The plaintiffs thereupon demanded of such receiver the cherries still remaining in their original packages, the manufactured product of such as had been prepared for marketing, and the proceeds of such, if any, as had been sold. Refusal of the demand followed, and the

processing and sale of the cherries, which had proceeded under both receivers, continued. At the time the receiver appointed by the state court took possession, practically all of the cherries were capable of identification, either as originally received or as a partially manufactured product. The situation in this respect had not materially changed when the proceedings in bankruptcy were commenced. The plaintiffs made a third demand, similar to that last mentioned, and further requested that, pending the delivery of the goods, the receiver keep them and the manufactured product and the proceeds thereof separate from other goods and capable of identification and deliver to them the proceeds to apply against the acceptance by the Naples bank drawn by the defendant against the bill of lading covering the cherries, which draft represented, in so far as the record indicates, plaintiffs' only advancement for defendant and its entire indebtedness to them, and was paid by them, in pursuance of their guaranty, on September 23. An agreement was thereupon made between the receiver and the plaintiffs whereby $7,000 were set apart to cover the cost of the cherries ($6,343.60), with interest and costs, which fund was to be applied in satisfaction of plaintiffs' claim in full, should it ultimately be determined that they were thus entitled, and was derived from the sale of the general mass of cherries with which the contents of the 373 barrels were commingled by the receivers after the respective demands upon them by the plaintiffs had been made, but which mass of cherries was largely, if not entirely, made up of those taken from such barrels. In reliance on such agreement, the plaintiffs took no further action to enforce the surrender and delivery of the goods. Their manufacture and sale went forward, and the proceeds arising therefrom have at all times exceeded the amount of the plaintiffs' claim, with interest and costs.

[1] In view of the proper demand made by the plaintiffs on the receiver appointed by the state court for the possession of the cherries, and the two subsequent appropriate demands on the receiver in bankruptcy, the plaintiffs' rights, if they were entitled to recover the cherries in specie, were not prejudiced by their treatment requisite to their marketing, or by the subsequent sale of them when processed, or by the intermingling of them with others by the receivers. Such rights must be regarded as fixed as of the date of the appointment of the receiver by the state court, and to be the same as if the cherries were susceptible of delivery in the original barrels in which they were first received by the defendant. Smith v. Township of Au Gres, 150 Fed. 257, 80 C. C. A. 145, 9 L. R. A. (N. S.) 876; Smith v. Mottley, 150 Fed. 266, 80 C. C. A. 154; Erie R. Co. v. Dial, 140 Fed. 689, 72 C. C. A. 183; Board of Com'rs v. Strawn, 157 Fed. 49, 84 C. C. A. 553, 15 L. R. A. (N. S.) 1100; Brennan v. Tillinghast, 201 Fed. 609, 120 C. C. A. 37—all of which cases were decided by this court. See, also, In re E. Reboulin Fils & Co. (D. C.) 165 Fed. 245.

[2] Trust receipts vary in form, but the one here involved is typical. Their use, by making available to merchants and manufacturers of limited means the credit of banking capital, is well calculated to facilitate and enlarge the business of foreign importation. Much dif-

ficulty would be encountered in carrying on our foreign commerce, were not bankers thus able to lend to importers the aid of capital, credit, business facilities, and foreign agencies. Contracts of the nature of that in question are entitled to, and have received from the courts, a support as liberal as the statutes will permit. When founded upon and conducted in good faith, they are entirely legitimate, and are to be upheld as against general creditors unless there be some material noncompliance with the local law. In re Cattus, 183 Fed. 733, 735, 106 C. C. A. 171 (C. C. A. 2); In re Richheimer, 221 Fed. 16, 22, 23, 136 C. C. A. 542 (C. C. A. 7).

[3-5] The solution of the problem before us requires (1) the determination of the character of the transaction embodied in the letter of credit, the terms of its acceptance and the trust receipt, and (2) the applicability, if any, of the Ohio law thereto. The position of the plaintiffs is that such transaction is devoid of all the elements of a pledge, mortgage, or conditional sale; that it made the cherries and their proceeds their property, subject only to an implied equitable obligation on their part to transfer the title and possession to the defendant upon payment of the draft issued under the letter of credit and of any other indebtedness owing to them by the defendant; and that it constituted a bailment, pure and simple, with liberty on the part of the defendant to sell the cherries for defendant's account or to process and sell the same without expense to them, subject to the requirement, however, that the proceeds be first applied to the satisfaction of the defendant's debt. A right superior to that of the general creditors is therefore claimed. The trustee in bankruptcy asserts that the transaction was either a conditional sale, or so much in the nature of a conditional sale as to fall within the provisions of the Ohio statute, which requires the vendor, in order to maintain a prior right over creditors to the property sold, to verify the contract of sale and file it with the county recorder of the county in which the vendee resides, if a resident of the state, and that, having failed thus to verify and file the contract of sale, the reservation of title in the plaintiffs is void as to lien creditors, and consequently void as to the trustee in bankruptcy, by virtue of the amendment of Act July 1, 1898, c. 541, § 47a (2), 30 Stat. 557, by Act June 25, 1910, c. 412, § 8, 36 Stat. 840 (Comp. St. 1916, § 9631), which provides that the trustee, "as to all property in the custody or coming into the custody of the bankruptcy court, shall be deemed vested with all the rights, remedies, and powers of a creditor holding a lien by legal or equitable proceedings thereon."

Whatever the extent and character of plaintiffs' title to and ownership of the cherries may have been, it is clear that it was not their purpose to engage in the business of importing and selling cherries, either before or after they were prepared for market. Unlike the ordinary buyer, they did not in person or through any agent of theirs participate in the selection of the goods, or in fixing the purchase price, or assume any risk as to their shipment or inferiority (if any) in quality or character, or any expense incurred for marine or subsequent insurance, or in transporting, caring for, processing, and selling

them. They did not prescribe their selling price or manner of sale, and were not to receive any part of the profits or bear any part of the loss resulting from their disposition. They advanced the purchase price at defendant's instance to the original vendor, on the condition that the title should pass directly to and remain in them as security for their protection until such fixed price and their stipulated commission should be paid; their advance being made "upon the security afforded by title to the goods until this liability had been discharged." Century Throwing Co. v. Muller, 197 Fed. 252, 258, 116 C. C. A. 614 (C. C. A. 3); In re Richheimer, 221 Fed. 16, 22, 136 C. C. A. 542 (C. C. A. 7). Their retention of title and ownership was not, however, to interfere with the defendant's processing and disposing of the goods in the regular channels of trade. They reserved the right at any time, for their better protection, to resume possession of the goods in their original or changed form and of the proceeds arising from their sale, but the defendant did not have the right to return the goods or any portion of them. The defendant was at liberty to meet its financial obligation to plaintiffs at any time, and, whenever it did so, the title to the goods was to pass absolutely to it. This, it is true, is not expressed in the contract; but it necessarily follows that when the defendant satisfied its indebtedness to the plaintiffs, they retained no vestige of claim to the goods or any part of them, in whatever form existing.

The courts have not agreed in their characterization of the title vested in the holder of a trust receipt, but it is quite generally recognized as a special form of "security title and no more," demanded by the exigencies of importation transactions. Charavay v. York Silk Co. (C. C.) 170 Fed. 819, 824; In re Dunlap Carpet Co. (D. C.) 206 Fed. 726, 731; In re Richheimer, 221 Fed. 22, 136 C. C. A. 542 (C. C. A. 7). The definitions given have taken color from the particular facts of the cases considered and the state of the local law. We do not deem it necessary to analyze and distinguish the reported cases, or attempt a precise definition of the banker's title acquired in such transactions, for the reason that, in view of the contractual relations of the parties, if the transaction under consideration does not disclose all of the elements of a conditional sale, it is at least so far in the nature of a conditional sale as to fall within the terms of the Ohio statute. Nor need we concern ourselves about the less comprehensive conditional sales acts of other states to which our attention has been directed, and with reference to which similar transactions have been considered. The acceptance of the terms and conditions of the letter of credit, the execution and delivery of the trust receipt to the plaintiffs, and the delivery of the goods to the defendant all occurred in Ohio. The title to them did not pass upon their delivery. They were received in that state for processing, and to remain there until sold in the regular course of business. They were found there when the state receiver was appointed and when bankruptcy proceedings intervened. The transaction is therefore governed by the applicable law of that state. Potter Mfg. Co. v. Arthur, 220 Fed. 843, 136 C.

C. A. 589, Ann. Cas. 1916A, 1268 (C. C. A. 6); Bryant v. Swofford Bros., 214 U. S. 279, 290, 291, 29 Sup. Ct. 614, 53 L. Ed. 997.

The pertinent statutory provisions are embraced in section 8568 of the General Code, which is as follows:

"When personal property is sold to a person to be paid for in whole or in part in installments, or is leased, rented, hired or *delivered* to another on condition that it will belong to the person purchasing, leasing, renting, hiring, or *receiving* it, when the amount paid is a certain sum, or the value of the property, the title to it to remain in the vendor, lessor, renter, hirer or deliverer thereof, until such sum or the value of the property or any part thereof has been paid, such condition, in regard to the title so remaining until payment, shall be void as to all subsequent purchasers and mortgages [mortgagees] in good faith, and creditors unless the conditions are evidenced by writing, signed by the purchaser, lessee, renter, hirer or *receiver* thereof, and also a statement thereon, under oath, made by the person so selling, leasing, or delivering the property, his agent or attorney, of the amount of the claim, or a true copy thereof, with an affidavit that it is a copy, be deposited with the county recorder of the county where the person signing the instrument resides at the time of its execution, if a resident of the state, and if not such resident, then with the county recorder of the county in which the property is situated at the time of the execution of the instrument."

We have italicized the controlling words. This is the initial case of its kind under the local statute, and yet we are not without helpful adjudications. In a trust receipt transaction the banker acquires the title for a particular customer—the importer—by advancing the purchase price for him to the foreign vendor without expectation of reward other than an almost nominal commission for the services rendered. The vendor in the ordinary conditional sales contract is other than a banker and has by the expenditure of his funds acquired the ownership of the article sold without reference to any particular purchaser and contemplates an actual profit to himself in its disposal. With the exception noted, the heretofore mentioned elements of the transaction under review are present in many sales permissible and actually conducted under the statute. Whatever the stipulations in the contract may be and however much the conditional character of the sale may be disguised, the court will inquire into the real nature of the transaction, that the purchaser may not be deprived of the benefit of the statutory provisions (Speyer & Co. v. Baker, 59 Ohio St. 25, 51 N. E. 442; Arbuckle v. Kirkpatrick, 98 Tenn. 221, 39 S. W. 3, 36 L. R. A. 285, 60 Am. St. Rep. 854), and, it may be added, that innocent purchasers and creditors who have fastened upon the property may be protected against the vendor's secret lien. The title, whether it be that of the banker or of the vendor acting strictly within the terms of the statute, is a "security title." In Register Co. v. Cervone, 76 Ohio St. 12, 24, 80 N. E. 1033, 1035, which arose under the act in question, the doctrine was approved that:

"The reservation of the title is but as security for the purchase price, and if the property is recovered by the seller, he must deal with it as security, and with reference to the equitable rights of the purchaser."

And this court, in interpreting the same act, held in Re National Cash Register Co., 174 Fed. 579, 581, 98 C. C. A. 425, 427:

"In equity the reserved title of the vendor is regarded as in the nature of a security for the payment of the price."

See, also, Simkins, Contracts and Sales, 939; Williston, Sales, § 579; Ross-Mehan Co. v. Pascagoula Ice Co., 72 Miss. 608, 615, 18 South. 364; Parks v. O'Connor, 70 Tex. 377, 8 S. W. 104.

It was not within the contemplation of the plaintiffs and the defendant that the payment for the cherries should be made in installments; nor is it necessary under the statute, as claimed by the plaintiffs, that the purchase price in transactions falling within its terms should be thus paid. The first clause of the section relates to sales of that character, but it is clear that under the succeeding clause there is no restriction on, or mention of, the manner in which payment may be made for personal property that "is leased, rented, hired or *delivered* to another on condition that it will belong to the person purchasing, leasing, renting, hiring, or *receiving* it, when the amount paid is a certain sum or the value of the property." The plaintiffs delivered to the defendant and the defendant received from them the cherries on condition that they should belong to the defendant whenever a specified sum—the purchase price to the foreign vendor and the plaintiffs' commission—was paid by the defendant. In Schlitt v. Store Fixture Co., 22 Ohio Cir. Ct. R. (N. S.) 168, 171, which correctly interprets the law, it was held that:

"Under this statute, it is not necessary that payments for the property purchased shall be made in installments. The statute includes not only sales made to be paid for in installments, but includes all contracts where the property sold is delivered to another on condition that the same shall belong to the person receiving such property whenever the amount paid shall be a certain sum, or shall be the value of such property; the title to the same to remain in the deliverer of such property until such sum shall have been paid. A careful reading of the section clearly shows that property sold and delivered by one to another, the title remaining in the deliverer until the receiver shall have paid a fixed sum, or the value of the property, is within the terms of the statute."

[6-9] Section 8570, Ohio General Code, provides that the vendor of personal property such as was made the subject of the contract here considered, shall not retake the same without tendering or refunding to the purchaser, lessee, renter, or hirer thereof, or the party receiving it from the vendor, the money paid by the vendor (if it be in excess of 25 per cent. of the purchase price), after deducting therefrom a reasonable compensation for the use of such property which in no case shall exceed 50 per cent. of the amount paid, unless the property has been broken or actually damaged, in which event a reasonable compensation for such breakage or damage shall also be allowed. The plaintiffs assert that the remedy accorded by such section is exclusive, and that the statute therefore cannot apply to the instant case for the reason that bankers, situated as they are, would be required to refund to the vendee a portion of the purchase price paid (if he has paid more than 25 per cent. of such price), which refund, if made, as well as any portion of the bankers' advancement which may not be realized by their sale of the goods, whether a refund be required or not, would be entirely lost to them. The contention made

is fallacious. The vendor is not remitted, in case of default in payment by the vendee, solely to a retaking of the property and to a refund, on the condition specified, of a portion of the purchase price. He may elect to recover a judgment at law on the unpaid installments of the purchase price and cause the goods and any other property of the vendee to be seized and sold in execution. Albright v. Meredith, 58 Ohio St. 194, 50 N. E. 719. See, also, Button v. Trader, 75 Mich. 295, 42 N. W. 834; Whitney v. Abbott, 191 Mass. 59, 77 N. E. 524; Smith v. Barber, 153 Ind. 322, 53 N. E. 1014. He may resume possession of the property, not as his own, without forfeiting or claiming to forfeit the vendee's right to pay any unsatisfied portion of the price and thereby perfect such vendee's ownership, but merely to increase his (the vendor's) security and resell on account of the vendee. Williston, Sales § 579; Columbia Law Review, 1915, p. 434; Miller v. Steen, 30 Cal. 402, 89 Am. Dec. 124; Tufts v. D'Arcambal, 85 Mich. 185, 48 N. W. 497, 12 L. R. A. 446, 24 Am. St. Rep. 79. If the proceeds of its sale be insufficient to satisfy the vendor's claim, he may in appropriate manner pursue the vendee for the residue. The vendor has the further remedy of foreclosure of his equitable lien. This mode of procedure was suggested as possibly permissible in Albright v. Meredith, 58 Ohio St. at page 201, 50 N. E. 719, and was sustained by this court in Re National Cash Register Co., supra, in which the grounds on which rest the right to an equitable lien and to a foreclosure of the same are stated. On the existence of such a lien, note also Jones on Liens, § 41; 20 Harvard Law Review, 371, note; Smith v. Barber, 153 Ind. at page 330, 53 N. E. 1014; Walker v. Brown, 165 U. S. 654, 664, 665, 17 Sup. Ct. 453, 41 L. Ed. 865. If the remedy provided by section 8570 were exclusive, the plaintiffs would not be required to refund any part of the purchase price, for the reason no part of it has been paid.

[10-13] The rule had always prevailed in Ohio that, when chattels were sold and delivered to be paid for in installments, the title to remain in the vendor until the purchase price was fully paid, the vendor, on the vendee's default, might retake the goods from him or any person having possession of them (Register Co. v. Cervone, 76 Ohio St. at page 20, 80 N. E. 1033), and thus the vendee, although but an insignificant portion of the purchase price remained unpaid, lost both his money and the goods (Weil v. State, 46 Ohio St. 450, 454, 21 N. E. 643; Sanders v. Keber, 28 Ohio St. 630; Sage v. Sleutz, 23 Ohio St. 1; Call v. Seymour, 40 Ohio St. 670). One of the purposes of the enactment of the conditional sales act (82 O. L. p. 238, passed May 4, 1885) was to ameliorate the hardship of the previously existing rule in favor of persons of limited means who are required to purchase on the installment plan. In Speyer & Co. v. Baker, 59 Ohio St. at page 25, 51 N. E. 444, in discussing this feature of the law, it was said:

"Purchasers on this plan are usually persons of small means, and unable to pay except in installments; and such sales are, partly on that account, made at prices in excess of those charged in other cases. Payment of part of the installments may amount to more than the actual worth of the property; and, on account of the unconscionable advantage which the vendor would otherwise have, by taking the property and retaining the money paid, the

Legislature deemed it proper to adopt the equitable rule of adjustment prescribed by the statute."

See, also, Register Co. v. Cervone, 76 Ohio St. at page 25, 80 N. E. 1033, and Caldwell v. Singer Mfg. Co., 7 Ohio Cir. Ct. R. 460. Under the statute the vendee, by making payment of part of the purchase price, acquires an interest in the property which he may sell or mortgage and which the vendor at his peril is bound to respect. Albright v. Meredith; Register Co. v. Cervone. In addition to affording measurable relief to purchasers on the installment plan, the Legislature, for the protection of third persons, who may deal with the vendee, against the secret claim and lien of the vendor, brought all conditional sales within the terms of the early established recording act by requiring them to be verified and filed in the appropriate recorder's office. The recording act recognizes that the business of the country is largely transacted on the basis of credit and that there should somewhere be found of record a disclosure of the state of title to real and chattel property and the extent of liens, if any, against the same. Its design is to prevent the practice of fraud upon subsequent purchasers and incumbrancers (Stansell v. Roberts, 13 Ohio, 148, 152, 42 Am. Dec. 193), to protect creditors against secret liens on the property of their debtors (Boyer v. Knowlton Co., 85 Ohio St. 104, 117, 97 N. E. 137, 38 L. R. A. [N. S.] 224), and "puts at rest all the vexed questions as to procedure, and enables all persons certainly to know whether the property of persons of whom they extend credit is incumbered or not, without being involved in vexed questions of prior equities and notice." Holliday v. Franklin Bank, 16 Ohio, 533, 539; Fosdick v. Barr, 3 Ohio St. 471, 474; Bloom v. Noggle, 4 Ohio St. 45, 54. The statutory provisions requiring the verification and filing of chattel mortgages and conditional sales contracts are the same. Instruments of both classes are good as between the parties to them, whether there be a compliance with the statute in the respects named or not; but, as against subsequent purchasers of property described in a chattel mortgage or a conditional sales contract and creditors who have fastened upon the property by some specific lien, neither of such instruments, if either unfiled or unverified, is valid. Wilson v. Leslie, 20 Ohio, 161; York Mfg. Co. v. Cassell, 201 U. S. 344, 351, 26 Sup. Ct. 481, 50 L. Ed. 782; Boyer v. Howland, 11 Ohio Cir. Ct. R. (N. S.) 564; Boyer v. Knowlton Co., 85 Ohio St. at page 113, 97 N. E. 137, 38 L. R. A. (N. S.) 224; Cass v. Rothman, 42 Ohio St. 380.

Under the Ohio rule, as the trust receipt was neither verified nor filed in the recorder's office, the effect of the appointment of a receiver by the state court and his seizure of the defendant's property was to fasten the claims of creditors upon it and to give that officer control over it for the benefit of creditors as effectually as the creditors would have held it by attachment or levy. Cheney v. Maumee Cycle Co., 64 Ohio St. 205, 214, 215, 60 N. E. 207. The status of the trustee in bankruptcy under section 47a (2) of the Bankruptcy Act, as amended June 25, 1910, is not unlike that of the receiver appointed by the state court. He became and is vested, as to the cherries covered

by the trust receipt, in whatever form existing, and as to their proceeds, with all the rights, remedies and powers of a creditor holding a lien by legal or equitable proceedings thereon. The plaintiffs have no priority over, but are entitled to share with, the defendant's general creditors.

The judgment of the District Court is affirmed.